NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0333n.06

Case No. 25-2095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 23, 2026
KELLY L. STEPHENS, Clerk

DARIN NEWSON,

  Plaintiff - Appellant,

v.

NYX, LLC,

  Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: DAVIS, MATHIS, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Darin Newson brought discrimination and retaliation claims against his employer NYX. Newson claimed that NYX denied him overtime work opportunities because Newson is a Black man and because he filed administrative complaints against NYX. The district court granted summary judgment to NYX. We affirm.

## BACKGROUND

At the summary-judgment stage, "[w]e view the facts and reasonable factual inferences in the light most favorable to" Newson as "the nonmoving party." *Doe ex rel. Doe #2 v. Metro. Gov't of Nash. & Davidson Cnty.*, 35 F.4th 459, 463 (6th Cir. 2022). But we need not, and should not, accept allegations based on "mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (citation modified).

## I. Facts

Newson worked in NYX's warehouse as a forklift operator—also known as a "hi-lo driver"—from September 2014 until he quit in January 2016. NYX rehired him in January 2019.

In April 2019, Newson complained to human resources that he was not receiving fair overtime opportunities. Newson complained again to NYX sometime in 2022. He alleged that he "didn't get . . . overtime on the weekend for over four years," but that his coworkers Ahmed and Abdul, who were of Arab descent, received weekend overtime work and "had over 500 hours more overtime" than Newson. RE 20-1, Newson Dep., at PageID 505, 511-12, 514. Abdul worked first shift, and Ahmed and Newson worked third shift until November 2019, when NYX formally promoted Ahmed to a supervisory role, although Ahmed may have had some supervisory responsibilities prior to that. In any event, Newson admitted that many of his allegations were unconfirmed and based only on "[f]actory talk." *Id.* at PageID 505.

Newson also admitted that he received some overtime work, including "volunteer overtime" work on the weekends, between 2019 and 2023. *Id.* at PageID 513. Newson uses the term "volunteer overtime" to refer to paid overtime hours outside his assigned shift days. *Id.* It appears that volunteer overtime was particularly desirable because it provided the largest opportunity for overtime hours. A regular shift ran for eight hours, and hi-lo drivers could only legally work for ten or twelve hours on any given day. So a hi-lo driver could earn the most overtime hours on volunteer overtime days, which often occurred on the weekend.

Newson worked over 150 overtime hours in 2019, over 250 overtime hours in 2020, over 350 overtime hours in 2021, over 400 overtime hours in 2022, and over 200 overtime hours in 2023.[1] Newson also "worked a couple Saturdays" in 2019 until he decided he did not want that overtime work anymore. *Id.* at PageID 511. And Newson held a standing Friday overtime shift in 2019, on top of his regular Sunday to Thursday shift, so Newson worked a "six-day-a-week job"

---

[1] We combine both regular overtime hours and double time hours because, based on Newson's own testimony, some weekend overtime hours were actually paid as double time hours, and neither party has provided a way to disaggregate these hours.

with at least one dedicated overtime day in 2019. *Id.* at PageID 511-14. Additionally, in November 2019, NYX asked Newson and another employee if one of them could pick up a volunteer weekend overtime shift. Newson did not immediately take the shift, instead responding "we will see," but he eventually took the shift. *Id.* at PageID 513.

NYX also offered Newson other overtime opportunities that Newson rejected. For example, in November 2019, NYX offered Newson overtime opportunities on first shift in addition to his regular hours on third shift. But Newson declined. NYX also offered Newson overtime opportunities at a different warehouse. But Newson again declined. Newson also declined to do "maintenance work" for overtime pay, even though he would have been paid at the higher "hi-lo pay" rate. *Id.* at PageID 502, 511. NYX offered Newson the opportunity to leave the receiving department and "go to shipping," but Newson "refused that," even though he assumed that the shipping position "pa[id] more." *Id.* at PageID 503. Newson also noted that he "turn[ed] down overtime work" "[o]ne time" when he was already "work[ing] in shipping for overtime." *Id.* at PageID 514. At some point in 2022 or 2023, NYX also offered Newson a standing, twice-monthly weekend volunteer overtime shift that Newson declined.

NYX also reported that Newson experienced discplinary and performance issues. In particular, Newson "was not completing the tasks given to him," RE 16-24, Email, PageID 375, and "refused" to do work when asked, RE 16-23, Email, PageID 373. Newson agrees that NYX "didn't like [his] work ethic" or his "attendance" record, but he suggests that NYX said those things only "because of [his] race." RE 20-1, Newson Dep., PageID 504-05, 507-09.

## II. Procedural history

In June 2019, Newson filed a complaint with the Michigan Department of Civil Rights (MDCR), alleging racial discrimination based on a purported denial of overtime opportunities. In

April 2022, Newson filed another complaint with the MDCR, which the MDCR identified as "a companion case" to the 2019 complaint. RE 16-15, MDCR Compl. (No. 614851), PageID 355. The 2022 complaint was dual-filed with the Equal Employment Opportunity Commission (EEOC) and alleged continued discrimination and retaliation due to his 2019 complaint.

In July 2023, MDCR dismissed the 2022 complaint, finding "insufficient evidence to proceed," RE 16-17, MDCR Notice, PageID 359, and in September 2023 the EEOC issued Newson a right-to-sue letter. Notably, though, NYX may not have received its copy of the EEOC letter because the letter contained a typo in NYX's mailing address.

In December 2023, Newson filed this lawsuit. Newson brought several claims, including: unlawful retaliation under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 1981, and Michigan's Elliot Larsen Civil Rights Act (ELCRA) (Counts I, II, III); racial discrimination under § 1981 and ELCRA (Counts IV, V); and several wage claims under the Fair Labor Standards Act (FLSA) and Michigan state law (Counts VI, VII, VIII). Newson later agreed to dismiss his wage claims.

Based on our best understanding of the record and Newson's briefing, Newson bases his retaliation and discrimination claims on his allegation that Ahmed and Abdul received overtime work on Saturdays, while Newson did not. Newson claims that NYX denied him overtime work because he is a Black man and in retaliation for his MDCR and EEOC complaints.

During discovery, NYX requested that Newson "identify all communications . . . regarding any allegation in the Complaint, including, without limitation, the U.S. Equal Employment Opportunity Commission." RE 21-1, Disc. Resp., PageID 540, 542. In response, Newson produced the MDCR dismissal notice but did not produce the EEOC right-to-sue letter. Further, neither party produced records regarding Ahmed or Abdul's overtime hours or income. Newson

apparently requested "[a]ny and all documents evidencing the overtime offered to other hourly forklift drivers from 2019 to present," but NYX objected to that request on several grounds, including that it was "overbroad." RE 35, Summ. J. Hr'g Tr., PageID 930, 997. Newson, for his part, never responded to NYX's objection. So "[t]here was never a meet and confer, motion to compel, anything following up on the discovery . . . to put [NYX] on notice that [Newson] wanted something else." *Id.* at PageID 994.

After discovery, NYX moved for summary judgment, arguing that Newson failed to establish a prima facie case of discrimination or retaliation. As part of his response, Newson asserted a novel claim for relief based on alleged discriminatory layoffs and also produced the EEOC right-to-sue letter for the first time, claiming that it was previously unavailable. The district court excluded Newson's right-to-sue letter as improperly produced and, consequently, found that Newson failed to exhaust administrative remedies for his Title VII claim. The district court also found that even if it were to consider the right-to-sue letter, Newson failed to establish a prima facie case of discrimination or retaliation. So the court granted summary judgment to NYX. Newson appealed.

**ANALYSIS**

"We review the district court's grant of summary judgment *de novo*." *Blankenship v. Louisville-Jefferson County*, 162 F.4th 644, 652 (6th Cir. 2025). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Patterson v. Kent State Univ.*, 155 F.4th 635, 644 (6th Cir. 2025) (quoting Fed. R. Civ. P. 56(a)). In deciding summary judgment, "[w]e draw all reasonable inferences for the nonmoving party," but as explained above, "we [will not] accept mere conjecture and speculation." *Id.* The nonmoving party still "must present significant probative evidence putting

the material facts in doubt." *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (citation modified). And we "may affirm on any grounds supported by the record." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012).

The standards for retaliation claims and discrimination claims, respectively, are the same across § 1981, ELCRA, and Title VII. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018). Because Newson relies on circumstantial evidence to support his case, "the *McDonnell Douglas* burden-shifting framework applies." *Id.*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, "the plaintiff must first make out a prima facie case of racial discrimination or retaliation." *Rogers*, 897 F.3d at 772.

**I.      We consider only Newson's overtime-based theory of relief.**

Newson's primary theory of relief is that NYX denied him overtime opportunities. But at the summary-judgment stage, Newson also asserted a novel theory of discrimination and retaliation, based on alleged layoffs that NYX conducted. A plaintiff may not raise a new theory of relief for the first time in response to a summary judgment motion. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788-89 (6th Cir. 2005). Rather, to properly add a new theory of relief, a plaintiff must "amend [his] complaint to put the defendants on notice of th[e] new theory of recovery." *Id.* at 786; *see also* Fed. R. Civ. P. 15(a).

Newson acknowledges that he did not attempt to amend his complaint to include the layoff-related theory of relief; he only raised it in response to NYX's summary judgment motion. So we assess only the overtime-based theory of relief.

Newson argues that the district court should have determined whether the new theory of relief prejudiced NYX before rejecting it. But contrary to Newson's claims, mentioning a fact in a deposition is not sufficient to properly allege a legal claim. Indeed, the two cases that Newson

cites to support this inaccurate proposition say the opposite of what Newson alleges: "[Plaintiff's] failure to follow this rule" and amend the complaint "in the correct way" "dooms [plaintiff's] claim." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019); *see also Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.").

## II.  Newson's retaliation claim fails.

To establish a prima facie case of retaliation, Newson must show that: (1) he "engaged in a protected activity;" (2) his "exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to [him]; and (4) a causal connection existed between the protected activity and the materially adverse action." *Rogers*, 897 F.3d at 775 (citation modified).  For the fourth element, a plaintiff is unlikely to "show[] a causal connection between the [formal] complaint and the alleged retaliatory actions" if the alleged retaliatory actions "were part of an ongoing pattern that predated the complaint." *Stewart v. Esper*, 815 F. App'x 8, 21 (6th Cir. 2020) (citing *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010)).  A retaliation claim based on previously occurring and ongoing adverse employment action can exist, however, where the adverse employment action escalates or worsens following the protected activity.  *See Stratton v. Bentley Univ.*, 113 F.4th 25, 44 (1st Cir. 2024) ("Intensification of preexisting harassment can be actionable." (citation modified)); *Kellar v. Yunion, Inc.*, 157 F.4th 855, 880 (6th Cir. 2025) (suggesting that adverse action occurring before knowledge of protected behavior is not causally connected to protected behavior).  This makes sense because retaliation, by its definition, requires "an employee's protected activity" to "cause[] the employer to take adverse action against" him.  *Doe v. Blanche*, No. 25-1442, 2026 WL

1211480, at *6 (6th Cir. May 4, 2026).

Here, assuming without deciding that Newson satisfied the first, second, and third elements of the prima facie retaliation test, Newson has not established the fourth element: a causal connection between the alleged denial of overtime and Newson's MDCR and EEOC complaints. Newson alleges that he was denied overtime "[s]ince February 2019," before Newson filed complaints with the MDCR and EEOC. RE 16-3, MDCR Compl. (No. 495487), PageID 317. And Newson does not provide evidence, or even allege, that the purported denial of overtime escalated after he filed his complaints. So Newson cannot establish a causal connection between the alleged denial of overtime and his protected activity.

Newson additionally claims that the district court erred by excluding his EEOC right-to-sue letter and finding that Newson failed to establish administrative exhaustion. But, even if we assume Newson is correct, these alleged errors are harmless because, as the district court explained and we conclude above, Newson still "failed to establish a *prima facie* case of retaliation." RE 22, Op. & Order, PageID 593. So the error, if any, does not warrant reversal. *See, e.g.*, *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

## III.    Newson's discrimination claim fails.

Newson also fails to establish a prima facie case of discrimination. For this claim, Newson must show that he was: "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position," and (4) "treated differently than similarly situated [non-protected] employees." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024) (citation omitted).

We first emphasize that, contrary to Newson's allegations in his brief, Newson—not NYX—is responsible for establishing each element of his prima facie case. *See, e.g.*, *Texas Dep't*

*of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981) ("[T]he plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination."); *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (same). This is true even in situations where the defendant controls the evidence because discovery, if done competently, will provide the available evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Newson seems to suggest that NYX is at fault for not producing discovery. But Newson is incorrect. Both NYX and Newson were responsible for actively engaging in discovery. *See Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 251 (6th Cir. 2000) ("[Plaintiff], for his part, had the right and responsibility to pursue [evidence] through discovery."). And Newson sidesteps his own fault as he failed to challenge NYX's objection to producing more employee records. If Newson wanted overtime files for other NYX employees, he had a responsibility to follow up on NYX's discovery objection.

Regardless, even if we assume without deciding that Newson has established the first three elements of a discrimination claim, he fails to satisfy the fourth element: identifying a similarly situated, non-protected employee who received differential treatment. Newson must identify a non-protected "comparator" employee who was "similarly situated in all *relevant* respects" to Newson yet received differential treatment. *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 511 (6th Cir. 2022) (citation modified). Newson identified Abdul and Ahmed as two potential comparators. But Newson has not presented sufficient evidence to create a genuine dispute as to either potential comparator.

First, consider Abdul. Newson appears to abandon Abdul as a comparator on appeal. At any rate, Abdul was not similarly situated to Newson because Newson "work[ed] on third shift," while "Abdul worked first shift," and Newson had explicitly declined NYX's offer "to come on

first shift to get overtime." RE 20-1, Newson Dep., PageID 502, 505, 509, 512-13; *see also Blount*, 55 F.4th at 512 (different job "responsibilities" and "work record" can make a comparator dissimilar (citation omitted)); *O'Donnell v. City of Cleveland*, 838 F.3d 718, 727 (6th Cir. 2016) ("The comparables must have . . . been subject to the same standards and have engaged in the same conduct without such differentiating . . . circumstances that would distinguish their conduct." (citation modified)).

Next, consider Ahmed, who was promoted to supervisor in November 2019. Newson fails to explain how Ahmed was similarly situated to Newson after he began the new position, so Ahmed is not a similarly situated comparator after November 2019. *See Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 672 (6th Cir. 2011) (noting that "supervisory and non-supervisory employees" are often not similarly situated).

Newson also fails to show that Ahmed was similarly situated to Newson prior to November 2019. Newson testified that Ahmed did "the same job" and "worked on the same shift" as Newson, presumably in the same NYX warehouse. RE 20-1, Newson Dep., PageID 513. But these bare allegations, without more, do not carry the day. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009). Newson has not provided Ahmed's actual job title or even identified whether Ahmed was a hi-lo driver like Newson. *See Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 787 (6th Cir. 2024) (noting that a comparator's "job title" is a "relevant dimension of comparison"). Newson also fails to identify whether he and Ahmed "dealt with the same supervisor." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Nor does Newson identify Ahmed's job responsibilities, which "can be used to determine whether two employees are similarly situated." *See Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004). In fact, the record suggests that Ahmed's responsibilities may have been different than Newson's. Newson testified that, at one

point, "Ahmed had us break down 96 containers," which implies that Ahmed may have had some supervisory responsibilities prior to November 2019.

Moreover, there is evidence that NYX found Newson's disciplinary and performance record to be spotty. But Newson fails to address Ahmed's work record, so we have no basis to infer that it was similar to Newson's record. *See Middleton v. Lexington-Fayette Cnty. Urb. Gov't*, No. 22-6040, 2024 WL 692966, at *7 (6th Cir. Feb. 20, 2024) (different "disciplinary history may establish that two employees are not similarly situated" (citation modified)).

Further, Newson fails to establish that Ahmed received differential treatment. *See Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 574 (6th Cir. 2006) (denying a discrimination claim where the comparators "did not receive more favorable treatment than [the plaintiff]"). Beyond repeatedly testifying that Ahmed received more weekend overtime work, Newson "fails to identify specific facts, as opposed to general allegations, to prove" that Ahmed in fact received more weekend overtime work opportunities than Newson. *Tenn. Conf. of the NAACP v. Lee*, 105 F.4th 888, 905 (6th Cir. 2024) (citation modified).

In sum, Newson's testimony, offering mere speculation and conjecture, fails to provide sufficient evidence to create a genuine dispute of material fact that his comparators were similarly situated yet received differential treatment.

## CONCLUSION

For these reasons, we affirm.